NANCE v. GREGORY AND PETTUS.

6L 343<br>117 288

BANKRUPTCY. *Usury. Purchaser at sale by assignee.* Where there is a lien upon property belonging to a bankrupt to secure a debt, and the property is sold by the assignee in bankruptcy, the purchaser at such sale cannot have the debt, secured by such lien, purged of usury.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. W. F. COOPER, Ch.

———— for complainant.

J. P. HELMS for defendants.

FREEMAN, J., delivered the opinion of the court.

Complainant says Gregory had become a bankrupt, and at his assignee's sale he became the purchaser of a certain house and lot in the city of Nashville. He says further, that on examination of the title he finds that Pettus held a mortgage on the house and lot, and he believes, and so charges, that the greatest part of the consideration for said mortgage is usurious— that the real consideration is $600 and interest, and the balance is usury. He then charges that Pettus had two judgments against Gregory for $300 each, and they are the only real considerations for said mortgage; but, as the knowledge of these rests more par-

ticularly with defendants, he prays a discovery from them as to the same. He then puts specific interrogatories as to what was the original consideration of said mortgage, whether the said consideration was in a note originally or judgments, and if so, what note and what judgments, with date and amounts. He then specifies by asking whether the only consideration for the mortgage was not two judgments on W. Robertson's docket of $300 each, and for a detail of the whole transaction. Pettus having power to sell the property under the mortgage, he prays for an injunction as to this, and also as to enforcing it as to whatever of usury there may be in the debt.

This is his bill, or its equities.

After demurring to the jurisdiction on various grounds not necessary to be noticed, Pettus answers, admitting the bankruptcy, the sale to complainant by his assignee, and says: "However, as complainant intimates that he was ignorant of respondent's incumbrance, respondent states that, to the best of his knowledge and information, complainant and the assignee examined together the mortgage registered as charged, and then avers that complainant heard said assignee announce publicly at the opening of said sale that said property would be sold subject to respondent's mortgage, and that he bought the same with full knowledge of its existence and contents."

We need not here consider the question discussed by the learned chancellor as to the effect of this answer—whether it is responsive to the bill, at least so far as it charges that complainant heard the assignee

announce publicly at the opening of the biddings that
the property was sold subject to the mortgage. For
the purposes of this opinion, the fact of registration
must be held conclusive on the purchaser that he had
notice of the contents of the mortgage. This being
so, it is not important to his legal rights whether he
had actual notice of it or not. We think he did,
however, from the proof in the record.

The question presented on this aspect of the case
is, whether the purchaser at an assignee's sale of prop-
erty incumbered with a mortgage for a specified sum,
of which all parties have notice by law, can after-
wards file his bill, on the simple footing of purchaser,
to get clear of the usury in the debt secured by the
mortgage.

A majority of the court think he cannot.

It is ingeniously argued that such a purchaser stands
in the shoes of the assignee, who stands in the shoes
of the bankrupt, therefore he has all the rights of
the bankrupt in reference to the property.

This is plausible, but is not sound and fairly the
fact of the case. The bankrupt is the original con-
tractor of the debt, and is relieved in a court of
equity on the ground that, though he is equally par-
ticipant in the violation of law, he is an oppressed
debtor *in vinculis* in the power of the lender, and,
therefore, the principle on which the relief rests is
the protection of *borrowers* against oppressive exactions
by lenders: *Bensley* v. *Homier*, 42 Wisc., 635. This
is all very well settled and understood. Whenever
the borrower comes into a court of equity for relief

against usury, he is backed by the consideration referred to, and is entitled to the proper relief.

But does the purchaser of property encumbered by a mortgage given to secure a debt tainted with usury, stand on the same ground? We take it, that it is almost too clear for argument that he does not.

He is not borrowing money—is not a needy debtor, oppressed by demands difficult to be met, and which harrass him perhaps beyond the stage where prudence and sound judgment guide his conduct; on the contrary, the purchaser is a man with money to invest, a surplus which he desires to use. He is perfectly free and unfettered, can buy the property or not as he chooses, and when he does he buys at the best price he can get it at, and for profit. He knows it is incumbered, and, under our registration laws, all parties bidding at a public sale, as this is, are charged with like knowledge, and may fairly be presumed to bid in view of this fact. Buying under these circumstances, he necessarily bids for the property as charged with the incumbrance of the mortgage, and so gets it at a price reduced by the sum of the debt secured upon it.

Now, is it not contrary to the real facts of the case to say that such a purchaser, under such circumstances, stands in the shoes of his vendor, so far as the equities against usury are concerned?

If the *borrower* is relieved because he is deemed in chains, and in the power of the lender, it is certain the purchaser can stand on no such ground in any court. To give him the same measure of relief

that is awarded to the borrower, is to put parties standing on diverse grounds and under circumstances as entirely opposite as can be conceived, on the same footing, and entitled to the same measure of relief. This cannot be sustained, we think, on any sound view of law, logic or justice.

It is said, however, the assignee of the bankrupt stood in the shoes of the bankrupt, and could have avoided the usury, and the purchaser from him should be entitled to do the same. But the cases are entirely dissimilar. The assignee is one to whom the property and rights of the debtor are assigned as a trustee for the benefit of creditors, and his duty is to so administer the fund as to effectuate that trust. If illegal charges are on the property, he is bound to disencumber it for the advantage of the beneficiaries of the fund. He takes the place, not as purchaser from, but simply as assignee of the debtor.

But the purchaser occupies no such position—has no such obligation or duties imposed on him. He is in such cases only an eager speculator—in most cases watching to catch a bargain—seeking to make money for himself by purchasing at the lowest rate the property of the unfortunate debtors who are compelled, under the law, to have their estates sold at great disadvantage usually, and proceeds appropriated *pro rata* to their debts. We all know how this is, and cannot as judges shut our eyes to facts well known to us as men, observant of the ordinary incidents of business transacted in the country with which we are all familiar. In view of these facts, we are unable to

see any sound principle on which such a purchaser can base his claim to invoke the aid of a court of equity in his favor. On the contrary, we think the equities are fairly on the other side. He gets the property at a price reduced by the amount of the incumbrance upon it—certainly to this amount, and usually does better for himself than even this, for, we know from observation, that property sold thus incumbered generally brings less than its real value, after deducting the sum of the charge on it, owing to the indisposition of purchasers to bid freely on property thus charged, or to buy at all property incumbered by claims of third parties. Be this as it may, the purchaser gets the full benefit of the amount of the incumbrance in the reduced price he pays for the property. Having done this, ought he not to be held, in equity and good conscience, to have assumed the burden by thus buying it? We think this the fair result of the facts of such a transaction.

Suppose an ordinary sale, where the vendor tells the vendee, this property is charged with a lien of five hundred dollars. The purchaser thus notified, as a matter of course, offers five hundred dollars less for it, and if he buys, thus gets this sum deducted from what he would otherwise have paid. Could such a purchaser have any equity after this to avoid or defeat the payment of this debt or lien? He voluntarily took the property subject to this charge, and is fairly estopped to interpose any objection to its being enforced.

The case of the purchaser at the bankrupt sale in

this case is precisely the same in its essential legal aspects; and, on the facts we have suggested as incident to such purchasers, the case is much stronger against him than the ordinary purchaser such as we have instanced.

The plain facts are, that the complainant purchased with knowledge fixed on him by law, and no doubt in fact of this mortgage, got the property at a price reduced by the amount of this mortgage, and now files this bill, seeking to discover the taint of usury, and thus reduce the amount of the mortgage debt. If he could succeed, to that extent he will be benefitted by being allowed to cut at both ends—reduce the original price by the amount of the mortgage debt, and then get clear of a part of the mortgaged debt, and to this extent he would be getting the property but pay nothing for it. Instead of this being an equitable claim, it would be gross injustice.

We add here, that the equity of redemption had been waived by Gregory in the mortgage, so that it is a clear case of purchase of property subject to a known incumbrance of a fixed and definite sum. Gregory and the assignee had both declined to interpose the question of usury, and so the property was sold as it stood in their hands. No new equities present themselves in favor of the purchaser, as we think. We think, for these reasons, that, on sound principle, the complainant's claim cannot be sustained.

When we turn to authority, there is apparent conflict in the view of courts on this question. From cases cited in the opinion of the learned chancellor

who decided this case, it has been held in England
that a court of equity gives relief as to usury in
favor of the assignee of a bankrupt as well as to the
other creditors, and on favorable terms. To this, so
far as the assignee is concerned, we can see no objec-
tion; but, as we have shown, this does not, as we
think, meet the question presented in the case before
us. It is clear that the principle that underlies the
doctrine of a court of equity in relieving against usury,
is one the theory of which is, that the right to the
relief is purely personal to the borrower, or his per-
sonal representative as administrator, distributee or heir.
It is given on the idea of personal advantage taken
of his necessities, and is an equity which he can en-
force or not at his option. The borrower is consid-
ered as the victim—as said in one of our own cases,
"the slave of the lender, *in vinculis.*"

These grounds for relief, as we have shown, have
no application whatever to a purchaser of the estate
of the borrower, with notice of an incumbrance fixed
upon it, and who buys subject to the charge, and
consequently takes the property *cum onere.*

It seems to be held in New York that a pur-
chaser of the incumbent estate may obtain relief against
usury; at any rate, such right would seem to be in-
cluded in the principle laid down in some of the cases
in that State: *Williams* v. *Tilt*, 33 New York, 325,
and cases cited.

On the contrary, it has been held in a number of
cases in other States that the question of usury is
strictly a personal one to the borrower, and could not

be set up by a subsequent mortgagee or purchaser: *Ready* v. *Koeble*, Sup. Ct. Wis., Albany Law Reg., vol. 22, p. 49; see, also, cases cited, *ibid.*, p. 3.

The same doctrine is held by the Supreme Court of Michigan, and that a subsequent purchaser cannot avail himself of this defense: *Sellers* v. *Botsford*, 11 Mich., 59; *Bank* v. *Kimmel*, 1 Mich., 84; see, also, *Spaulding* v. *Davis*, 51 Vermont, 79.

It has also been repeatedly held that the purchaser of an equity of redemption of one who purchases subject to the mortgage, cannot set up usury as against the incumbrance or charge on the property purchased: *Conover* v. *Hobart*, 24 N. J. Eq., 120; *Bridge* v. *Hubbard*, 15 Mass., 103; *Reading* v. *Weston*, 7 Conn. R., 413; *Stephen* v. *Muer*, 8 Ind., 352; *contra*—20 N. H., 100; 32 Miss. R., 142. These latter cases are cited from, and will be found in Albany Law Reg., vol. 20, p. 3.

For the reasons we have given, we think, as applicable to a case like the present, the principle thus announced is the correct one, and is sustained both by principles as well as the weight of authority. As the purchaser in such a case does not come within the principle on which a court of equity gives relief against usury, he must be repelled, unless the statutes of our State give him a remedy. It is certain no such right is given by our Code. The plea of usury is allowed in favor of the original debtor, his surety, accommodation endorser, or his personal representative, by sec. 1951 of the Code, and the judgment creditors of the debtor, by sec. 1955, but to no one else.

We therefore conclude the complainant, for the reasons given, in no aspect of the case is entitled to the relief sought.

There is another aspect of the case on which we would reach the same result. It is set up as a distinct defense to complainant's bill, that he has no right to relief in a court of chancery, because, in 1867, a judgment had been had by Pettus against Gregory for the full amount of the mortgage debt, and this before his bankruptcy. This judgment was taken many years after the debt was created; was by confession, it is true, but was freely and voluntarily permitted by the debtor Gregory. This judgment cannot be held, as said by this court, as one of the processes in the usurious operations (*Frierson* v. *Moody*, 3 Hum., 364), or as presenting a case where the usurer "makes the courts of justice the medium through which to consummate his usurious contract, holding over his debtor an influence that would paralyze his will and prevent his making defense," as said in *McKoin* v. *Cooly*, 3 Hum., 559. On the contrary, the debt had been created in 1861, and the party was as free to make his defense in 1867 as any defendant debtor ever could be.

The jurisdiction of the courts of law and equity being concurrent on this question, the party failing to make this defense in a court of law when free to do so, would be precluded from afterwards making it in a court of equity, on the principle of *res adjadicata*, when such judgment is interposed as a defense, as is done here, unless he could set up some equitable rea-

son for his· failure so to do. None appears in this· case, and we think none existed.

The bill not showing the fact of a former judgment so as to allow of a demurrer, the former judgment, as we held at last term at Knoxville, might well be interposed in the answer, or by plea, to defeat a resort to a court of chancery, and could only be met by showing some equitable reason why the defense was not interposed in the court of law.

This being so, if Gregory would have been precluded, as we think he was by this judgment at law, his assignee would also have been, and so also, as we think, much more the purchaser at the assignee's sale.

The result is, that the decree of the chancellor will be reversed and the bill dismissed with costs.