Arthur KRAUSE, Linda J. Krause, Sol Gorrelick, Esther Gorrelick, Annie Krause, Lillian Bershader, Irving Saidlower and Esther Saidlower, Plaintiffs,

v.

Joseph HAUSER and Stanley F. Goldman, Defendants.

No. 66-C-552.

United States District Court
E. D. New York.

May 12, 1967.

Kamerman & Kamerman, New York City, for plaintiffs, Jerome Kamerman, New York City, of counsel.

Valicenti, Leighton, Reid & Pine, New York City, for defendants, Albert D. Jordan, New York City, of counsel.

MISHLER, District Judge.

In this action, the plaintiffs seek to have transfers of certain stock and leaseholds declared null and void, and for an accounting, on the grounds that the transactions constituted self-dealing in violation of the defendants' fiduciary obligations. The plaintiffs, all of whom are New York residents, are limited partners in Joseph Hauser Associates (Associates), and the defendants, both of whom are Connecticut residents, are the general partners. Jurisdiction is based upon diversity of citizenship.

Only one of the defendants, Joseph Hauser, has been served, however, and he now moves under Rule 12(b) (2) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of personal jurisdiction, claiming that the service of the summons and complaint upon him in Connecticut was ineffective. The plaintiffs, in turn, rely upon sections 302(a) and 313 of New York's CPLR. The court held a hearing on the jurisdictional issues, and the undisputed facts are as follows:

In 1960, the defendants were operating a discount department store in Wallingford, Connecticut as a corporate entity, Very Best, Inc. (Very Best), and had plans to open another store in Torrington. Accordingly, they entered into an agreement with Emil Green, Joseph Abrams, Sidney Heller and Frank Zuckerbrot to form Associates, a limited partnership under the laws of Connecticut. It was decided that the defendants would contribute their stock interests in Very Best, and would be the general partners in the new venture, while the others would contribute, or raise through friends and associates, the sum of $150,000.00, and would participate as limited partners.

Funds for the new venture were solicited in New York by Zuckerbrot, a member of the New York bar, with offices in New York City. The plaintiffs purchased their interests in New York, and actually signed the partnership agreements in Zuckerbrot's office. Moreover, they also signed a certificate of limited partnership, required by Connecticut law, in that office.

In March, 1961, Associates mailed letters over Hauser's signature "To All Participants," including the plaintiffs, which solicited additional funds for expanded partnership operations at two new locations—Utica and Rome, New York. Arthur Krause, one of the plaintiffs, made an additional contribution of $6,000, paid in two checks which were drawn on a New York bank and transmitted to Connecticut. Thereafter, Associates acquired leases for the Utica and Rome sites, and the certificate of limited partnership was amended to include the general real estate business as one of the partnership's activities. The plaintiffs signed the amended certificate in Zuckerbrot's office.

During 1961 and 1962, Very Best and Associates maintained a bank account in New York City, and the former also had a buying office at 128 West 30th Street. Hauser regularly came to New York to inspect both the Rome store and the buying office, and visited Zuckerbrot on company business on several occasions. Their business discussions concerned, in part, the solicitation of funds for Associates' contemplated expansion.

The plaintiffs allege that subsequently the defendants organized a corporation known as Stars of New York, Inc. (Stars), to which they transferred Associates' assets in return for 55,000 shares of common stock and 82,500 shares of cumulative preferred stock of Stars. The plaintiffs further allege that the defendants then sold another 7,000 shares of common stock in Stars to certain third parties, and then caused Stars to issue an additional 160,000 shares of common stock, each defendant getting 55,400 shares, and the balance going to third parties. These are the transactions which form the basis of the complaint.

After the above transfers, in a letter dated March 9, 1964, Hauser, acting as a general partner in Associates, called a meeting of all the limited partners at the Wellington Hotel in New York City for the purpose of reporting on Star's finan-

cial condition. At that time, the partnership's sole asset was its stock interest in Stars, a Delaware corporation having its principal place of business in Connecticut.

## Effect of Service

Rule 4(d) (7) of the Federal Rules of Civil Procedure permits a litigant to serve his summons and complaint " * * * in the manner prescribed by the law of the state in which the service is made * * * in an action brought in the courts of general jurisdiction of that state." In this action, the plaintiffs assert that personal jurisdiction has been secured over Hauser through the utilization of sections 302 and 313 of the CPLR.[1] The pertinent provisions of section 302 read as follows:

(a) Acts which are the basis of jurisdiction.

A court may exercise personal jurisdiction over any non-domiciliary * * * as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

1. transacts any business within the state; or

2. * * *

3. owns, uses or possesses any real property situated within the state.

Hauser's attempt to insulate himself from the thrust of the long-arm statute is based upon the following arguments:

(1) Associated was organized in Connecticut, all the partnership activities have taken place in Connecticut, and the plaintiffs " * * * knew full well and intended to participate in Connecticut, and in a Connecticut venture". Affidavit of Joseph Hauser, dated October 17, 1966, at p. 6;

(2) The transactions involving New York residents were initiated by others —Green, Abrams and Zuckerbrot;

(3) The leasing of the two New York sites was suggested by "the same company which built the Torrington store" and "the promoting group represented primarily by Mr. Green indicated that they and their associates wished to participate in this expansion * * *." Affidavit, supra, at pp. 3–4;

(4) Hauser's contacts with New York were in his capacity as a general partner, rather than as an individual; and

(5) The defendants signed the original and the amended certificates of limited partnership in Connecticut, and the only reason that the limited partners signed those same documents in New York was that it was more convenient.

■ While Hauser's explanations as to why certain activities were conducted in New York may be significant in determining their relationship to the plaintiffs' claim, the issue that must be decided is simply whether Hauser transacted business in New York. Personal jurisdiction exists if the plaintiffs' claims arose from *any business* transacted *within* the state, and the application of such statutory words of art to specific facts must be governed by New York law. Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 587 (2d Cir. 1965); Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 319 (2d Cir. 1964).

■■ "[A] single transaction in New York, out of which the cause of action has arisen, may satisfy the requirement of the transaction of business provision (CPLR 302, subd. [a], par. 1)." Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d, 443, 456, 261

---

1. § 313. Service without the state giving personal jurisdiction:

A person domiciled in the state or subject to the jurisdiction of the courts of the state under section 301 or 302, or his executor or administrator, may be served with the summons without the state, in the same manner as service is made within the state, by any person authorized to make service within the state who is a resident of the state or by any person authorized to make service by the laws of the state, territory, possession or country in which service is made or by any duly qualified attorney, solicitor, barrister, or equivalent in such jurisdiction.

N.Y.S.2d 8, 18, 209 N.E.2d 68, 75, cert. denied sub nom Estwing Mfg. Co. v. Singer, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). Personal jurisdiction can not be acquired under section 302, however, if the defendant's business activities within the state were unrelated to the plaintiff's claim. Rene Boas & Associates v. Vernier, 22 A.D. 2d 561, 257 N.Y.S.2d 487 (1st Dep't 1965).[2]

■ Hauser argues that since he conducted business activities in New York merely as a general partner, and not in his individual capacity, the New York courts can not acquire personal jurisdiction over him in actions arising out of those activities. The court rejects this argument, see, United States v. Montreal Trust Co., 358 F.2d 239, 243 (2d Cir.), cert. denied, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966),[3] because it ignores the fact that the gravamen of the plaintiff's claim is an alleged violation of Hauser's fiduciary duties. It is no answer to say that Hauser was present in New York only as a partner and not as an individual, since the plaintiff's claim is based upon a charge that while Hauser was acting in New York as a general partner, he was also furthering his own individual interests and, in fact, realized substantial personal gain. The real issues are whether his activities within the state gave rise to the plaintiff's claim, and whether they constitute "transacting any business" within the meaning of the statute.

■ The defendants executed the original partnership agreement in Connecticut and transmitted the papers to Zuckerbrot's office in New York where they were signed by the plaintiffs. Subsequently, Hauser came to New York on several occasions pursuant to his obligations under the partnership agreement. His presence and conduct at such times were not those of a visitor, but were related to partnership business forming the basis of the plaintiff's claim. While the execution of the partnership contract in New York might have been a sufficient jurisdictional nexus in and of itself, the fact that the defendants executed the agreement in Connecticut is not determinative.[4] Their activities in New York both prior and subsequent to the execution of the agreement constitute a sufficient basis for the plaintiff's reliance upon section 302. Liquid Carriers Corp. v. American Marine Corp., 2d Cir., February 28, 1967, 375 F.2d 951; Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra.

The motion is in all respects denied. Settle order on two (2) days notice.

---

2. Cf., Bryant v. Finnish Nat'l Airline, 22 A.D.2d 16, 253 N.Y.S.2d 215 (1st Dep't 1964), where jurisdiction was based on a finding that the defendant was "doing business" under the "minimum contacts" theory enunciated in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and CPLR § 301, as distinguished from "transacting any business" within the meaning of CPLR § 302(a)(1).

3. In the *Montreal Trust* case, the district court found that the defendant used his position as general manager to force American importers to share their profits with his friends and relatives, and concluded that such conduct did not constitute the transaction of business in New York by the defendant as an individual. The court of appeals reversed, holding that the defendant could not have been acting in his role as a corporate officer when he engaged in that scheme.

4. In Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra, 15 N.Y. 2d at 457 n. 5, 209 N.E.2d at 75 n. 5, 261 N.Y.S.2d at 18 n. 5, the court noted that under the Illinois Long-arm statute the place of the execution of the contract is not the "exclusive criterion," but rather the jurisdictional nexus must be found in the "totality of the defendant's activity within forum."