**Leonard Gary WARREN**

v.

**DYNAMICS HEALTH EQUIPMENT MANUFACTURING CO., INC., Lloyd J. Lambert and Lloyd Lambert, Jr.**

No. 79–3300.

United States District Court,
M. D. Tennessee,
Nashville Division.

Feb. 6, 1980.

Fred D. Thompson, Robert A. Zika, Nashville, Tenn., for plaintiff.

John B. Owens, Jr., Nashville, Tenn., for defendants.

## MEMORANDUM

WISEMAN, District Judge.

The plaintiff, a Tennessee resident, has filed this cause of action against Dynamics Health Equipment Manufacturing Company, Inc., [DHEM] a Texas corporation, and Lloyd Lambert, Sr., and Lloyd Lambert, Jr., both of whom are Texas residents. The plaintiff alleges that the defendants have breached a contract entered into with the plaintiff and have wrongfully appropriated the plaintiff's invention. This matter is presently before the Court on defendants' Rule 12(b) motion to dismiss the plaintiff's claim for lack of personal jurisdiction over each of the defendants. This motion was the subject of a hearing before this Court conducted on January 18, 1980.

In a diversity action, the jurisdictional reach of the court is determined by the longarm statute of the forum state. *King v. Hailey Chevrolet Co.*, 462 F.2d 63 (6th Cir. 1972); *Velandra v. Regie Nationale Des Usines Renault*, 336 F.2d 292 (6th Cir. 1964). The pertinent subsections of Tennessee's longarm statute, T.C.A. § 20–235, which are applicable in the present case provide:

> Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
>
> (a) The transaction of any business within the state;
>
> (b) Any tortious act or omission within this state;
>
> . . . .
>
> (f) Any basis not inconsistent with the Constitution of this state or of the United States.

A determination of the outer parameters of in personam jurisdiction permitted by the due process clause of the Constitution is a federal question, however, governed in the Sixth Circuit by three criteria set out in *Southern Machine Co., Inc. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968):

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

These guidelines were established to implement the now familiar standard declared by the Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), that requires the defendant to have certain minimum contacts with the forum state such that the "maintenance of suit does not offend 'traditional notions of fair play and substantial justice'." *Id.*, at 316, 66 S.Ct. at 158, 90 L.Ed. at 102, *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278, 283 (1940).

The Court will examine the contacts existing between these defendants and this forum within the framework of *Mohasco's* three-pronged analysis.

DOES THIS COURT HAVE IN PERSONAM JURISDICTION OVER THE DEFENDANT CORPORATION DHEM?

■ On December 11, 1973, the plaintiff and the defendant Lambert, Sr., negotiated and executed a contractual agreement in Texas whereby the plaintiff conveyed all of his interest in an exercise computer, the Computrex 2001, which the plaintiff had allegedly invented, to a corporation to be formed and financed by Lambert, Sr., for the manufacture and marketing of this invention. In return for this conveyance the plaintiff was to receive a 50 percent share of the ownership in the corporation in addition to certain monetary payments. Lambert, Sr., asserts that Dyn-A-Pro, Inc., was formed in accord with the terms of his contract with the plaintiff, which corporation subsequently authorized the defendant corporation, DHEM, to manufacture and market the plaintiff's device.

DHEM promotes the sale of its health equipment in Tennessee through unsolicited advertisements sent through the mails to potential Tennessee purchasers.[1] Among these materials is literature promoting the plaintiff's alleged invention designated by the corporation as the Programmer 500. In addition, the affidavit of one Tennessee health spa owner states that the equipment he had ordered from the defendant corporation in 1979 was delivered from the corporation's Texas plant and later assembled and installed by one of the corporation's employees.[2]

This Court is of the opinion that these contacts with Tennessee satisfy the *Mohasco* criteria.[3] First, DHEM is purposefully availing itself of profit-making activity in Tennessee and is apparently succeeding. Secondly, the plaintiff's action against DHEM arises from the activity of the corporation within this state, that is, DHEM's advertisements which are sent into Tennessee promoting the plaintiff's alleged invention. Finally, this Court finds that the defendant corporation's connection with this state makes it reasonable to compel the corporation to come to Tennessee to defend

1. *See* affidavit of Bill Johnson which states that he has received solicited and unsolicited advertising material from DHEM by mail on a regular basis, plaintiff's Exhibit 3.

2. *See* affidavit of Eddie Sellers, plaintiff's Exhibit 6.

3. Because the Court bases this conclusion only upon DHEM's nexus with Tennessee, it is not necessary to determine whether the jurisdiction producing contacts of Modern Dynamics, Inc., should be attributed to DHEM. The Court would note, however, that the statement in DHEM's literature that "Dynamics Health Equipment Manufacturing Co., Inc., was originally founded by Lloyd Lambert, Sr., in 1961 as Modern Dynamics, Inc." gives the impression that the two companies are now one and the same. See plaintiff's Exhibit 1.

this suit. As the court in *Mohasco* stated, "*In personam* jurisdiction is not assumed as punishment for the commission of a tort or the breach of a contract. Its assumption is not based on the fault of the defendant but on the interest of the state." *Southern Machine Co. v. Mohasco Indus., Inc., supra,* at 384. Here the defendant corporation does not contend that its solicitation of business in Tennessee is an isolated event. Rather DHEM is continuing to promote its business within Tennessee's commerce and this state has a concomitant, continuing interest in providing a forum for her citizens affected by the corporation's in-state activities. The defendant cannot complain if along with the profits from the Tennessee markets it must also accept the process from the Tennessee courts. *Id.* at 386.[4]

DOES THIS COURT HAVE IN PERSONAM JURISDICTION OVER THE INDIVIDUAL DEFENDANTS LLOYD LAMBERT, SR., AND LLOYD LAMBERT, JR.?

The Lamberts contend that they lack the essential minimum contacts with Tennessee to sustain longarm jurisdiction in this state. In support of this position the defendants emphasize that the execution of the contract in issue occurred in Texas and that although the defendants may have communicated with the plaintiff by telephone and through the mails regarding this agreement, they have never physically entered Tennessee for business purposes. This Court agrees that the Lamberts' nexus with Tennessee is too tenuous to vindicate

the exercise of personal jurisdiction in this forum.[5]

The defendants also challenge the plaintiff's efforts to assert personal jurisdiction over them under the "alter ego" theory. This theory is an exception to the "fiduciary shield" doctrine, a doctrine which holds that jurisdiction over the individual officers and employees of a corporation may not be predicated merely upon jurisdiction over the corporation absent activities by the individuals sufficient to subject them to a state's longarm statute. 4 Wright & Miller, Federal Practice and Procedure, Civil Section 1069, Supp. 39 (1979). The cases which discuss the fiduciary shield doctrine have generally failed to differentiate between the issue of substantive liability and the issue of personal jurisdiction. *Idaho Potato Comm'n v. Washington Potato Comm'n,* 410 F.Supp. 171 (D.Idaho 1976), provides the most extensive analysis of the doctrine to date. In that case an Idaho state agency brought suit against a Washington state agency and its individual members for approving an advertising plan which was disseminated in Idaho and which allegedly infringed the plaintiff's trademark. The members of the Washington Commission were not shown to be present in Idaho. In addressing the jurisdictional issue, the court compared the case to the hypothetical of a truck driver who enters a state and commits a tortious act, reasoning that both he and his employer would be subject to that

---

**4.** The defendant corporation insists, however, that misappropriation of a trade secret does not result in jurisdiction unless the product has been sent into the forum state, based on *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784 (9th Cir. 1977). In that case Amba claimed that a California corporation injured its business in Arizona by selling cheap imitations of Amba's merchandise to California mail order companies, which then distributed the goods in interstate commerce. The defendant corporation did not make sales in Arizona and Amba alleged but failed to establish that the mail order houses resold the merchandise in the forum state. The district court dismissed the action for lack of personal jurisdiction under Arizona's longarm statute which had been judicially determined to impose no greater barrier to the assertion of personal jurisdiction than does the due process clause of the Consti-

tution. However, unlike the present case, the defendant company in *Amba Marketing* was deemed not to have had genuine and substantial commercial ties with the forum state. The appellate court suggested that had such contacts been shown to exist, then extension of personal jurisdiction over the defendant in Arizona would have been justified.

**5.** The Court is not persuaded by plaintiff's emphasis on the fact that his attorney participated telephonically in the parties' contractual negotiations from his office in Tennessee. This connection is also too strained to support personal jurisdiction over the individual defendants. *Glacier Refrigeration Serv. v. American Transp., Inc.,* 467 F.Supp. 1104, 1107 (E.D.N.Y. 1979).

state's personal jurisdiction. Although the defendant Commission, like the more common corporate defendant, had sufficient contacts with the foreign state to permit assertion of personal jurisdiction over it for actions taken outside the state, the court was unwilling to assert personal jurisdiction over the commissioners who acted in their official capacities but outside the state.[6] Indeed, several courts have declined to exercise jurisdiction over individual defendants who concededly have entered the state in relation to the subject matter of the lawsuit with no consideration being given to the inconsistency between such a result and that which would apply in a case similar to the hypothetical truck driver.[7]

 However, as alluded to previously, the alter ego theory is an exception to the fiduciary shield doctrine thereby allowing the courts to pierce the corporate veil in order to fasten liability on the individual defendant. The mere fact that all or almost all of the corporate stock is owned by one individual or a few individuals will not afford sufficient grounds for disregarding corporateness unless this factor is combined with other factors clearly supporting the disregard of the corporate entity on grounds of fundamental equity and fairness. *Iron City Sand & Gravel Div. of*

*McDonough Co. v. West Fork Towing Corp.,* 298 F.Supp. 1091, 1098 (N.D.W.Va.1969), *rev'd on other grounds,* 440 F.2d 1958 (4th Cir. 1971), *cited in DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 685 (4th Cir. 1976). Thus, if the corporation is owned and controlled entirely by the individual defendant,[8] if the individual's actions are fraudulent or are otherwise criminal,[9] or if they serve his personal interests as distinct from those of the corporation,[10] the court may disregard the corporate shield.

A few cases have gone further and asserted jurisdiction over a corporate officer while conceding that the individual defendant did not have sufficient contacts with the state of the forum apart from contacts through the corporation. In a result directly opposed to the fiduciary shield doctrine, these courts impute the contacts which exist between the corporate employer and the state to the individual, usually on the grounds that the corporate form was not adequately maintained,[11] that the individual owners of the corporation were using the corporation as their agent for the transaction of business in the forum state,[12] or that the interest of the individual defendant was identical to that of the corporation.[13]

In dealing with the facts of the present case, a distinction must be made between

---

**6.** The Court emphasized that unlike the hypothetical truck driver, it was doubtful whether the individual members of the Commission could reasonably have anticipated that their activity in Washington could subject them to personal liability in Idaho. *Id.* at 182.

**7.** *See e.g., Wilshire Oil Co. v. Riffe,* 409 F.2d 1277 (10th Cir. 1969) (a former corporate employee entered the forum state and allegedly made misrepresentations in a bid submitted in the course of contract negotiations on behalf of the principal); *Lehigh Valley Indus., Inc. v. Birenbarum,* 389 F.Supp. 798 (S.D.N.Y.1975), *aff'd,* 527 F.2d 87 (2d Cir. 1975) (an individual defendant's trips to the forum state of New York were deemed unrelated to the plaintiff's cause of action; other of the individual's visits were deemed to be pursuant to his agency capacity); *Fashion Two Twenty, Inc. v. Steinberg,* 339 F.Supp. 836 (E.D.N.Y.1971) (Any business which the individual defendants may have transacted within the forum state was held to have been transacted in a corporate agency capacity only); *Path Instruments Int'l Corp. v. Asahi Optical Co.,* 312 F.Supp. 805

(S.D.N.Y.1970) (an individual defendant's visits to the forum state were found to be in accord with individual's agency relationship with the principal corporation).

**8.** *See Dudley v. Smith,* 504 F.2d 979 (5th Cir. 1974).

**9.** *See United States v. Montreal Trust Co.,* 358 F.2d 239 (2d Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966).

**10.** *See Krause v. Hauser,* 272 F.Supp. 549 (E.D. N.Y.1967).

**11.** *See Country Maid, Inc. v. Haseotes,* 299 F.Supp. 633 (E.D.Pa.1969).

**12.** *See House of Koscot Dev. Corp. v. American Line Cosmetics, Inc.,* 468 F.2d 64 (5th Cir. 1972).

**13.** *See Holfield v. Power Chemical Co., Inc.,* 382 F.Supp. 388 (D.Md.1974).

circumstances in which a corporate employee enters the forum state and those in which he does not. If the employee has no direct contacts with the foreign state it may be unreasonable, given only his relationship to the corporation that may have such contacts, to conclude that he would be subject to the personal jurisdiction of the court. Otherwise every employee of a corporation would be subject to the personal jurisdiction of the courts in every state where the corporation is doing business. On the other hand, if the corporate structure is being used as a vehicle for the conduct of business by an individual who has total control over corporate activities, including the activities giving rise to the suit, then the existence of the corporate form should not immunize him from the jurisdictional contacts of the corporation.

■ Here the plaintiff has not offered any compelling reason in support of his contention that the Lamberts are the alter egos of DHEM. The fact that DHEM's alleged misappropriation of the plaintiff's invention may have inured to the benefit of the Lamberts is insufficient to ascribe to them the corporation's contacts with this state. Furthermore, the Court has reviewed the state court decisions which the plaintiff has cited to establish that Tennessee adheres to the principle that a corporation and the individual or individuals owning all its stock will be treated as identical where necessary to accomplish justice.[14] However, in contrast to the facts under consideration, all of these cases dealt with the substantive liability of the individual defendant or defendants rather than the issue of personal jurisdiction. Within this context the cases speak basically in terms of the corporation being used as a mere instrumentality or agent of the individuals.

The courts have traditionally been reluctant and cautious in piercing the corporate veil and consequently no significant body of precedent has yet evolved to contradict the more frequently voiced and broader conclusion that an individual cannot be reached through the corporation. In the present case the Court is not persuaded that the facts warrant departure from the general rule. The defendants' motion to dismiss Lambert, Sr., and Lambert, Jr., is, therefore, granted.

---

**14.** The cases which the plaintiff cites are *Oak Ridge Auto Repair Serv. v. City Finance Co.*, 57 Tenn.App. 707, 425 S.W.2d 620 (1967); *Neese v. Fireman's Fund Ins. Co.*, 53 Tenn.App. 710, 386 S.W.2d 918 (1964); *Post Sign Co. v. JEMC's Inc.*, 48 Tenn.App. 13, 342 S.W.2d 385 (1961); and *E. O. Bailey and Co. v. Union Planters Title Guaranty Co.*, 33 Tenn.App. 439, 232 S.W.2d 309 (1950).