**COUNTRY MAID, INC.**

v.

**Vasilios HASEOTES et al.**

**Civ. A. No. 68–605.**

United States District Court
E. D. Pennsylvania.
April 29, 1969.

William S. Rawls, of Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for plaintiff.

Dolores Korman, of Dilworth, Paxson, Kalish, Kohn & Levy, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

BODY, District Judge.

### I. FACTS

Plaintiff, Country Maid, Inc., of Delaware, which operates a dairy processing plant and ten convenience dairy stores, has brought this antitrust action against eight individuals and thirteen corporate defendants. Plaintiff's complaint seeks treble damages and injunctive relief for violations of Sections 1, 2 and 3 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 2 and 3, as amended), Section 2(a) of the Clayton Antitrust Act as amended by the Robinson-Patman Act. Judge Kraft granted Lily-Penn Food Stores, Inc.'s and Cumberland Farms of New Jersey, Inc.'s motions to strike allegations of violations under Section 3 of the Robinson-Patman Act (15 U.S.C. § 13a). Plaintiff charges that defendants have engaged in a conspiracy to drive it out of business by selling milk to customers at unreasonably low prices.

The suit is presently before the Court on the motion of all the defendants, except Lily-Penn and Cumberland Farms of New Jersey, to quash service of process and to dismiss the action against them for lack of jurisdiction and venue.

Service on each of the individual defendants was made by leaving a copy of the complaint with William M. Adshead, Esq. an attorney with an office at 911 Liberty Trust Building, Philadelphia, Pennsylvania. The corporate defendant, Lily-Penn Food Stores, Inc. has admitted that William M. Adshead, Esq. is its statutory agent, and that his office is its principal office in Pennsylvania.

Service was made on the thirteen corporate defendants pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22) by serving a copy of the complaint at the registered office of each corporate defendant.

Both Lily-Penn and Cumberland Farms of New Jersey have raised no objection to venue or jurisdiction.

Vasilios Haseotes, his wife, Aphrodite, and their three sons, Demetrios, George and Byron, together with the other individual defendants, are engaged in the business of producing and processing milk and ice cream which they sell together with other food products in the New England states, New Jersey, Pennsylvania and Delaware. Three of the corporate defendants operate processing plants, eight operate retail dairy stores, and one operates both a plant and store. (See Appendix A)

Vasilios Haseotes and his wife and three sons own all of the stock of each corporate defendant. Vasilios and Aphrodite own together 25% in each corporation. Each son owns 25% of each corporation. They all comprise the entire Board of Directors of each corporation. The officers of each corporation are as follows:

| | |
|---|---|
| President | Vasilios Haseotes |
| General Manager | Demetrios B. Haseotes |
| Vice - President | Aphrodite Haseotes |
| Vice - President | Byron Haseotes |
| Treasurer & Secretary | Francis N. Alger |
| Asst. Sec. & Gen. Counsel | Robert F. McNeil |
| Asst. Treasurer | Lily Haseotes |

The individuals do not reside in Pennsylvania, own no property in Pennsylvania, and have as their residence and place of business either Massachusetts or Rhode Island. They filed affidavits on these facts.

The eleven moving corporate defendants have no direct contact with Pennsylvania as individual corporations. They are incorporated in a foreign state; they each have their principal office in a foreign state; none of them has any branch office in the State of Pennsylvania; they

are not qualified or licensed to do business in the State of Pennsylvania; they have no statutory agents in the State of Pennsylvania; they have no bank accounts in the State of Pennsylvania; they hold no shareholders' or directors' meetings in the State of Pennsylvania. None of the eleven corporations sends any merchandise into Pennsylvania nor solicits or advertises in the State of Pennsylvania.

Demetrios B. Haseotes is the General Manager of all the corporate defendants. His principal office is located at 777 Dedham Street, Canton, Massachusetts. He exercises overall direction and control of each corporate defendant.

George Haseotes is the Production Manager of the four processing plants and has his principal office at 777 Dedham Street, Canton, Massachusetts.

Byron Haseotes is the Sales Manager for the retailing corporate defendants which together operate over five hundred convenience stores under the name "Cumberland Farms". Byron's principal office is located at 777 Dedham Street, Canton, Massachusetts.

Francis N. Alger is the Controller for each of the defendant corporations. His principal office is at 777 Dedham Street, Canton, Massachusetts.

John Duffy is the Purchasing Agent for each of the processing corporations (4) and has his principal office at 777 Dedham Street, Canton, Massachusetts.

Thomas Tierney is the Advertising Manager for all of the corporate defendants operating retail convenience stores. His principal office is in Canton, Massachusetts.

Robert F. McNeil, Assistant Secretary and General Counsel for all corporate defendants, maintains their corporate records and corporate seal. Many of the corporate records needed by Demetrios, George, and Byron Haseotes in the performance of their corporate duties are at their respective offices in Canton, Massachusetts. Some of the relevant records are located at the various plants and stores operated by the separate corporations.

Demetrios Haseotes, General Manager, has overall authority of the operations carried on by the thirteen corporate defendants. Under and reporting to him, are George Haseotes, Production Manager, and Byron Haseotes, Sales Manager.

The convenience stores are divided into four geographical areas without regard to the corporate entities. Each area has a District Supervisor who reports to Byron Haseotes, Sales Manager. The District Supervisors, with the assistance of the Store Managers, are responsible for the day-to-day business operations of the convenience stores in their areas. The District Supervisors report directly to Byron Haseotes as Sales Manager.

Ray Morrisey is the District Supervisor for the retail convenience stores operated by Cape Cod Farms, Inc., which is in parts of Massachusetts; for some of the retail convenience stores operated by Commonwealth Dairy Stores, Inc. in Boston, and for some of the retail convenience stores operated by Narragansett Food Store, Inc. in Rhode Island.

Arthur Dandeneau is the District Supervisor for the retail convenience stores operated by Connecticut Food Stores, Inc. in Connecticut; for some of the retail convenience stores operated by Central Food Store, Inc. in parts of Massachusetts; and for some of the retail convenience stores operated by Cumberland Farms Dairy, Inc. in Massachusetts.

Mike Milette is the District Supervisor for the retail convenience stores operated by Cumberland Farms Northern; Inc. in Maine and New Hampshire; for some of the retail convenience stores operated by Cumberland Farms Dairy, Inc. in Massachusetts; for some of the retail convenience stores operated by Central Food Store, Inc. in parts of Massachusetts; for some of the retail convenience stores operated by Commonwealth Dairy Stores, Inc. in Boston; and for one of the retail stores operated by Narragansett Food Store, Inc. in Rhode Island.

Armand King is the District Supervisor for retail convenience stores operated by Lily-Penn Food Stores, Inc. in Pennsylvania; Burlington Food Store, Inc. in New Jersey and Delaware Food Stores, Inc. in Delaware.

Each of the processing plants has a separate Plant Manager responsible for the day-to-day operations of the plant and reports to George Haseotes, Production Manager.

The prices charged by the various defendant corporations to each other in inter-company transactions are fixed by Demetrios Haseotes after consultation with Byron Haseotes, George Haseotes and Francis N. Alger, Controller in charge of financial affairs of all the corporations. There is no compensation from any of the corporate defendants to Cumberland Farms Dairy, Inc. which is specifically attributable to their use of the registration trademark "Cumberland Farms".

There are apparently no consolidated balance sheets, tax returns, financial statements, books and records between the corporate defendants. The financial records are kept separately. However, periodically there is a composite statement on which certain financial information of all the corporate defendants is listed.

Many of the sales policies affecting the retail convenience stores are set by the District Supervisor, generally after consultation with the individual store managers. Some sales policies are determined by Byron Haseotes, Sales Manager, after consultation with the District Manager in whose area that policy applies. Some sales policies are determined by Byron Haseotes after consultation with Demetrios B. Haseotes, General Manager.

Decisions with respect to advertising for the retail convenience stores operated by the defendant corporations are determined by a group consisting of Demetrios B. Haseotes, George Haseotes, Byron Haseotes, Francis N. Alger, the appropriate District Supervisor, the Assistant Sales Manager, the Advertising Manager, and, if appropriate, the Plant Manager.

The prices at which milk and other products are sold to the public by the retail convenience stores are set by Demetrios B. Haseotes, in consultation with Byron Haseotes and Francis N. Alger. The District Supervisor is also consulted.

Plaintiff made discovery on the issues of venue and jurisdiction, filing detailed interrogatories directed to the thirteen corporate defendants. Each of the defendants filed answers to the interrogatories on July 19, 1968. Thereafter, plaintiff and defendants filed stipulations of facts on September 25, 1968 and October 22, 1968 which together with the submitted affidavits, constitute the record before this Court.

## II. CONCLUSIONS

The individual defendants' motions to dismiss for want of jurisdiction and venue hinge upon whether personal service upon William M. Adshead, Esq., Lily-Penn's statutory agent, located at its principal office in Pennsylvania, is effective. The question depends upon whether William M. Adshead, Esq., was their agent under 15 U.S.C. § 15 (venue) and Rule 1009(b) (2) (iii) (service) of the Pennsylvania Rules of Civil Procedure, 12 P.S. Appendix.

The corporate defendants' motion to dismiss for want of jurisdiction and venue depend upon whether they are "transacting business" through Lily-Penn within the meaning of Section 12 of the Clayton Act.

This is not a typical situation involving a locally incorporated subsidiary or branch and a foreign parent corporation. In such cases, plaintiffs generally try to obtain jurisdiction over the foreign parent, or its directors, shareholders or executives by serving the local entity and relying on theories of agency or piercing the corporate veil.

The instant case is different from the parent-subsidiary cases in that there is no wholly-owning parent. There are, instead, thirteen sibling corporations, all engaged in business under the name of "Cumberland Farms" although each corporation has a different name of incorporation. In addition, this case is also different because the owners, directors, and executive boards of all thirteen corporations are identical (and have been made defendants in their own right). '

The crux of plaintiff's complaint is that:

"Cumberland Farms has subsidized its unreasonably low prices charged for milk in large containers sold at its New Castle County convenience dairy stores by charging higher prices for milk sold at its convenience dairy stores located in New England and New Jersey."

In other words, all of the defendant corporations are really one operation directed and controlled by the individual defendants. The defendants' motions to dismiss for lack of jurisdiction and venue are largely based upon the contention that Lily-Penn is not the agent of either the corporate or individual defendants. In fact, the defendants deny there is any connection between Lily-Penn and the corporate defendants and that the individual defendants merely act in an official capacity toward Lily-Penn.

While the parent-subsidiary cases are not helpful in all aspects of this case, certain fundamental principles regarding the nature of corporations may be applied here.

█ Drawing from the parent-subsidiary cases, it is quite clear that the courts must move cautiously when presented with questions involving the validity of corporate entities. Corporate entities have greatly facilitated commerce in this country and the public policy reasons behind the laws guiding their existence are based upon sound principles of economics and legal liability. The Court of Appeals for the Third Circuit has said that "* * * [t]he corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception. * * * Care should be taken on all occasions to avoid making 'the entire theory of the corporate entity * * * useless.' " [1] The court sets out the general rule for disregarding the corporate existence:

"* * * [t]he court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy, or shield someone from liability for a crime." [2]

The Supreme Court of Pennsylvania has stated that:

"Neither the similarity of names between the parent and subsidiary corporation * * *, nor the total ownership of the stock of the subsidiary by the parent * * * nor the fact that a single individual is the active chief executive of both corporations * * * will per se justify a court in piercing the corporate veil if each corporation maintains *a bona fide separate and distinct corporate existence*." [3]

[Emphasis supplied]

The test, then, is whether the local corporation, Lily-Penn's, "existence * * * as a distinct corporate entity is, * * * in all respects observed." [4]

█ In scrutinizing the instant set of facts, it is the conclusion of this Court that Lily-Penn Food Stores, Inc. of Pennsylvania together with the other twelve corporate defendants *do not measure up to the above-mentioned standards which protect the corporate entity's integrity.*

In certain, but not all, respects their individual corporate identities were maintained. For example, each corporation

1. Zubik v. Zubik, 384 F.2d 267, 273 (3rd Cir. 1967).

2. Zubik v. Zubik, supra, at 272.

3. Botwinick v. Credit Exchange, Inc., 419 Pa. 65, 72, 213 A.2d 349 (1965).

4. Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 335, 45 S.Ct. 250, 69 L.Ed. 634 (1925).

maintained its own minutes and corporate records. There were separate directors' meetings. There were no consolidated tax returns among the various corporate defendants although certain financial information of each corporation was periodically made part of a composite. The nature of this composite is not in the record. Inter-company transactions involved charges and the payment of money.

On the other hand, several factors show that the individual defendants through the corporate defendants were involved in one large enterprise, or operation. Most important to this Court's decision is the fact that the more than 500 retail convenience stores are divided into sales districts by geographical considerations rather than with regard to the corporate entities. Each of the four districts has a Sales District Supervisor reporting to Byron Haseotes, who is Sales Manager for all of the retail business

The prices at which milk and other products are sold to the public are set by the group consisting of Demetrios, Byron, and George Haseotes, together with Francis N. Alger, Controller, and the District Supervisors. The prices are set with regard to the districts rather than corporate entities. The sales policies are also set on a district basis.

Decisions with respect to advertising are made by a group consisting of Demetrios, George, and Byron Haseotes, Francis N. Alger, the appropriate District Superior, the Assistant Sales Manager, the Advertising Manager, and Plant Manager.

While the District Supervisors of the retail stores may do most of the day-to-day managing, they are nonetheless subject to the close and pervasive control of the Haseotes.

The thirteen corporate defendants do business under the name of "Cumberland Farms" which is the only name that appears in the telephone books of the area served by the corporate defendants. In addition, there is no consideration paid to Cumberland Farms Dairy, Inc. for the use of its registered trademark by the other corporate defendants. The advertising paid for by each corporate defendant does not mention its actual corporate name. "Cumberland Farms" appears on all of the bottles, stores and trucks of the corporate defendants.

On September 1, 1967, in an "Open Letter to Our Customers", D. B. Haseotes, as Cumberland Farms General Manager, stated in part:

"On October 27, 1966, Cumberland Farms opened "cash and carry" dairy stores in the Philadelphia area and sold milk to customers at 79¢ per gallon. * * * "

In the several exhibits of advertisements submitted to the Court by the plaintiff, only the name "Cumberland Farms" is mentioned.

This case is not similar to obtaining jurisdiction over a "Quality Court" motel or officer in a foreign state by serving a local "Quality Court" motel, as was suggested in oral argument. In "Quality Court" situations the name is the only common factor. The day-to-day management, together with prices to be charged and advertising to be placed, unlike this case, are in the exclusive control of the local owner-proprietor.

All of the main business decisions in the instant action took place in Canton, Massachusetts. There is no indication that any policy decisions with respect to Lily-Penn are made in Pennsylvania. There is no indication that the District Supervisor in this area even has an office in Pennsylvania.

While it is true that common owners, common directors or common executives alone do not necessitate going behind the corporate structure, the Court in *Zubik* [5] has stated:

" * * * the failure of various corporate formalities either contributes to

---

5. Zubik v. Zubik, supra 384 F.2d at 274.

the fraud involved or strengthens the argument for injustice by holding the individual in effect estopped."

The aforementioned disregard of corporate entities seems to be, thus, strengthened by the fact that five of the individual defendants own all of the stock in the thirteen companies involved. They are all members of the Haseotes family. Further, these five are also the only directors of the same corporate defendants. Francis N. Alger, as the Controller for all of the corporate defendants, participates in most of the major policy decisions.

■■■ On the basis of the above facts and discussion this Court is of the opinion that:

(1) William M. Adshead, Esq., statutory agent for Lily-Penn, was the agent of the individual defendants for purposes of establishing venue. Section 4 of the Clayton Antitrust Act (15 U.S.C. § 15) states:

> "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, * * *"

*Because of the disregard for corporate entities and the control which the defendants exercised over Lily-Penn, this Court believes that William M. Adshead comes within the meaning of "agent" in Section 14.* As the court in Goldlawr, Inc. v. Shubert stated: [6]

> "From the affidavits filed by the parties it appears that both J. J. Shubert and John Shubert had the unquestioned right and power to control Lawrence and that each repeatedly exercised such right and power in directing Lawrence's business activities in this district."

This Court agrees with that court's definition of agency under the antitrust laws being based largely upon considerations of control.

(2) Jurisdiction was properly obtained over the individual defendants under F.R. Civ.P. 4(d) (7) which reads that service may also be made:

> "* * * in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process * *"

Rule 1009(b) (2) (iii) of Pennsylvania Rules of Civil Procedure provides for service:

> "* * * by handing a copy, (iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof."

*Service was accomplished by service upon William M. Adshead, Esq., statutory agent at the principal office for Lily-Penn in Pennsylvania. This Court also believes that the individual defendants were transacting business in Pennsylvania through the Lily-Penn Food Stores, Inc. in Pennsylvania.*

■■ (3) In the case of the corporate defendants, once venue is established, jurisdiction is a fairly simple matter to accomplish under Section 12 of the Clayton Act (15 U.S.C. § 22). *This Court believes that the corporate defendants were transacting business in Pennsylvania through Lily-Penn Food Stores, Inc.* Section 12 states:

> "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all processes in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

Under the interpretation of the facts this Court takes, the corporate defendants are transacting business in Pennsylvania through Lily-Penn. They are all part of one operation. Their managements have

---

6. 169 F.Supp. 677, 681 (D.C.1958), aff'd 276 F.2d 614 (3rd Cir., 1960).

chosen to organize them in such a manner that their individual identities are very blurred, if at all existent.

(4) It follows then that the service effected at the registered office of each defendant is good. (15 U.S.C. § 22).

## APPENDIX A

| Name of Corporation | State of Incorp. | Principal Place of Business | Description of Business Activity |
|---|---|---|---|
| Burlington Food Store, Inc. | N. J. | Riverton, N. J. | Operates convenience stores selling milk and other products in N. J. |
| Cape Cod Farms, Inc. | Mass. | Canton, Mass. | Operates convenience stores selling milk and other products in Mass. |
| Central Food Store, Inc. | Mass. | Canton, Mass. | Operates convenience stores selling milk and other products in Mass. |
| Connecticut Food Store, Inc. | Conn. | Meriden, Conn. | Operates convenience stores selling milk and other products in Conn. |
| Commonwealth Dairy Stores, Inc. | Mass. | Canton, Mass. | Operates convenience stores selling milk and other products in the metropolitan area of Boston. |
| Cumberland Farms of Connecticut, Inc. | R. I. | Canton, Mass. | Processes milk and other bottled products in a plant in Meriden, Conn. and operates a dairy farm in Mass. |
| Cumberland Farms Dairy, Inc. | R. I. | Canton, Mass. | Operates a milk processing plant in Canton, Mass. and manufactures ice cream in Canton, Mass. |
| Cumberland Farms Northern, Inc. | N. H. | Portsmouth, N. H. | Operates a plant in Portsmouth, N. H. which processes milk, orange juice, fruit drink and cream and operates convenience stores selling milk and other products in Maine and N. H. |
| Delaware Food Store, Inc. | Del. | Delaware | Operates convenience stores selling milk and other products in Delaware. |
| Narragansett Food Service, Inc. | R. I. | Canton, Mass. | Operates convenience stores selling milk and other products in R. I. |
| V. S. H. Realty, Inc. | R. I. | Canton, Mass. | Owns property in various New England and Middle Atlantic states on which are stores and milk processing plants (none in Pennsylvania). |