# G. ROYAL NEESE, Trustee, v. FIREMAN'S FUND INSURANCE COMPANY. —386 S.W.(2d) 918.

Eastern Section. August 5, 1964.

Certiorari Denied by Supreme Court October 5, 1964.

Will Allen Wilkerson, Chattanooga, for appellant, G. Royal Neese, trustee.

Milligan, Hooper & Harris, Chattanooga, for appellee, Fireman's Fund Ins. Co.

COOPER, J. This case originated as a general creditors' bill filed by G. Royal Neese, as trustee in bankruptcy for First Trust Company, against the defendant, Fireman's Fund Insurance Company, as surety on a statutory "Real Estate Agent's and Salesman's Bond." The bond was "conditioned to secure and save harmless all persons who may be injured or aggrieved by any wrongful act or default" of the Real Estate Management, Inc. (REMCO) in its capacity as a real estate agent. The bill was sustained, and several claims, in addition to the one filed by First Trust Company, were filed to recover rents collected by REMCO, but not remitted to the owners of the properties.

The defendant insurance company demanded strict proof of the various claims, and denied liability for the

claim of First Trust Company on the ground that "the funds, accounts, and operations of Real Estate Management Inc. and First Trust Company were so closely bound together, overlapping and interchangeable that [the] court should refuse to indulge the fiction that * * * [they] were separate legal entities."

The claims were referred to the Master, who, after hearing proof, allowed all claims except the one filed in behalf of First Trust Company. The Master, in denying First Trust's claim, found that:

"The proof shows that the two corporations, Real Estate Management, Inc. and First Trust Company, co-mingled their funds prior to bankruptcy * * * [and] there is insufficient proof to show that there was a failure of Real Estate Management, Inc. to remit the rents. * * *"

The Chancellor, in overruling exceptions to the Master's report, stated:

"The testimony clearly shows that Real Estate Management, Inc., collected the rents sued for, but it equally shows that during the month of March, 1962, the said Real Estate Management, Inc., by check drawn upon the very account in which said rent funds were deposited, paid to the First Trust Company the sum of $7500.00 which was credited to a so-called 'intercompany note account' rather than the rent account. There is abundant testimony that funds were indiscriminately transferred between these two companies at the whim and caprice of Scott Brown, the president and treasurer and majority stockholder of both companies. The Court, therefore, is constrained to hold that the $7500.00 transfer should be credited, first, to the rent indebtedness owing by Real

Estate Management, Inc., to the First Trust Company rather than to the so-called intercompany note account;" that to hold otherwise "would amount to a fraud upon the defendant surety company."

The Chancellor went on to state "that in order to prevent a fraud upon the defendant surety company, the fiction of separate corporate entities of Real Estate Management, Inc., and First Trust Company should not be indulged in this instance. Not only was one and the same man the president and treasurer of both companies and owned controlling stock in both, but the companies in their actual operations treated the funds of each as the funds of each other and passed these funds back and forth indiscriminately so that their separate accounts amounted to a single treasury."

Complainant contends, on appeal, that the Chancellor committed error (1) in holding that REMCO had remitted the rent collections, and (2) in holding that the affairs of REMCO and First Trust Company were so intermingled that the separate corporate entities should be disregarded.

As pointed out by counsel, there are no disputed facts in this case—the parties differing only in the interpretations and conclusions drawn therefrom. However, for the sake of clarity, we think it is necessary to give a more complete statement of the evidence than that contained in the Chancellor's memorandum and which is set out above.

The record in this cause shows that First Trust Company and REMCO both were adjudged bankrupt on April 4, 1962, and complainant, G. Royal Neese, was appointed trustee in bankruptcy for both corporations.

Prior to bankruptcy, Scott N. Brown and his immediate family owned in excess of 70% of the stock of both First Trust Company and REMCO. Mr. Brown was president, chairman and treasurer of both companies, and, as such, directed the financial affairs of both companies to the extent that he would designate the account on which any check over $100.00 would be drawn.

As of March 30, 1962, First Trust Company had ten directors, all of whom were also directors of REMCO. REMCO had two additional directors. First Trust Company had eleven elected officers, all of whom were also elected officers, bearing the same titles, of REMCO. The appointed officers were the same in both companies; the executive committees were the same, except that E. C. Patterson, Jr. was on the executive committee of First Trust Company only.

There was some overlapping of creditors but probably more difference in the creditors than in any other area. First Trust Company was by far the largest creditor of REMCO.

The two companies had the same address and the same phone number; there was overlapping of personnel; office materials and supplies were stored together; hiring for both companies was usually done by the same person; until the end of 1961, all employees of both companies were paid on checks of REMCO; after that, on checks of First Trust Company.

There were numerous financial transactions between the two companies, most of which were recorded in an "intercompany note account." It was the practice of the companies to balance this account at the end of the fiscal year, and the debtor company would execute a note pay-

able to the creditor company in the amount of the balance. No effort was made to collect these notes, and at the date of bankruptcy of the two companies, there was a general ledger indebtedness of $603,850.91 owed by REMCO to First Trust Company. This balance did not include any indebtedness for rents collected, as they were carried in a separate account.

REMCO's rent account ledgers show that it collected $3,476.42 in rents for First Trust Company during March, 1962, and that there was a net amount of $2106.59 due First Trust Company.

The rent collections were deposited by REMCO in its General Business Account (Pioneer Bank Account No. 110), as were the monies received from First Trust Company on the intercompany note account. There was a balance of approximately $4,000.00 in this account on the date of REMCO's bankruptcy.

During the month of March, 1962, First Trust Company advanced REMCO $22,500.00—$19,000.00 of which was deposited in Pioneer Account No. 110. This transaction was recorded in the intercompany note account.

On March 12 or 17th, REMCO transferred $7500.00 to First Trust Company from its Pioneer Account No. 110. This transaction was also recorded in the intercompany note account.

An examination of the rent account ledgers filed as an exhibit to the record in this cause discloses that approximately 25% of the total rents collected by REMCO for First Trust Company during the month of March, 1962 was collected after the $7500.00 transfer of funds noted above.

The record further shows that Scott N. Brown withdrew some $9,000.00 from Pioneer Bank Account #110 during the first three months of 1962. The purpose behind these withdrawals of funds from Pioneer Bank 110 is not revealed by the record.

As noted above, the Chancellor, in confirming the report of the Master, was of the opinion that the $7500.00 transfer should be credited to the rent indebtedness owing by REMCO to the First Trust Company rather than to the so-called intercompany note account. In doing so, the Chancellor relied on the general rule that a guarantor is entitled to have a payment by a principal debtor credited against the guaranteed obligation where the money paid is the identical money for the payment of which the guarantor is bound, or where the payment is made from the proceeds of the transactions covered by the obligation of the guarantor and the source of the funds is known to the creditor. See 24 Am.Jur., Guaranty, Sec. 76, p. 924; 40 Am.Jur., Payment, Section 148, p. 816.

We have no quarrel with this well-established rule, but do not think it has any application in the present case in view of the undisputed evidence (1) that the money was paid from a general account, (2) that $22,500.00 of the funds deposited in the account during March, 1962 did not come from rents but was the fruit of the "intercompany note account", and (3) that a portion of the rents in question were not collected by REMCO until after the transfer of the $7500.00. We think the logical source of the funds transferred was as reflected by the books of REMCO, the "intercompany note account."

From the above, we have concluded that there is no evidence from which it can be inferred that REMCO had remitted the rents collected in March, 1962 to First

Trust Company and that First Trust Company is entitled to recover on the bond, unless, as insisted by defendant, the relationship of the two corporations was such that they should be treated as a single entity.

It is generally recognized that a corporation is a separate entity; however, where there is a showing that the corporation is a mere sham or dummy, or is being used to defeat public convenience, justify wrong, or protect fraud, the corporate entity will be disregarded. Fletcher on Corporations, Perm.Ed. (1963), Secs. 25 and 41, and cases there cited. See also Post Sign Co. v. Jemc's, Inc., 48 Tenn.App. 13, 342 S.W.(2d) 385, wherein it is stated:

''A corporation is usually treated as a separate entity. (citing numerous cases)

''The separate entity will be quickly disregarded, however, upon a showing that the corporation is a mere sham or dummy, or where necessary to accomplish justice. Fidelity Trust Co. v. Service Laundry Co., 160 Tenn. 57, 22 S.W.(2d) 6. This has occurred in a variety of situations, as where necessary to effectuate the intent of the testator in the case just cited, and in Baldwin v. Davidson, 37 Tenn.App. 606, 267 S.W.(2d) 756; or where the corporation is in effect the agent of the stockholders. Towles Co. v. Miles, 131 Tenn. 79, 173 S.W. 439, or to fasten liability on a parent corporation where it exercises such control over its wholly owned subsidiary as to render it a puppet. Dillard & Coffin Co. v. Richmond Cotton Oil Co., 140 Tenn. 290, 291, 204 S.W. 758; Tennessee Consol. Coal Co. v. Home Ice & Coal Co., 25 Tenn.App. 316, 156 S.W.(2d) 454; Diogo v. Holland, 3 Cir., 243 F.(2d) 571; or to prevent a fraud, Dale v. Thomas H. Temple Co., 186 Tenn. 69, 208 S.W.(2d) 344; Madison Trust Co. v. Stahlman, 134 Tenn. 402, 183 S.W. 1012; E. O. Bailey

& Co. v. Union Planters Title Guaranty Co., 33 Tenn.App. 439, 232 S.W.(2d) 309; or where construction of a contract in the light of circumstances is deemed to justify. American Indemnity Co. v. Southern Missionary College, 195 Tenn. 513, 260 S.W.(2d) 269, 39 A.L.R.(2d) 714. The cases cited are but illustrative but we find none in which the corporate entity is disregarded except to prevent injustice * * *."

In Fletcher on Corporations, Perm.Ed. (1963), Sec. 43, it is pointed out that:

"A very numerous and growing class of cases wherein the corporate entity is disregarded is that wherein it is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation. The control necessary to invoke what is sometimes called the "instrumentality rule" is not mere majority or complete stock control but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal. * * * One corporation may be disregarded where the two are identical or indistinguishable in fact. Unless it is a mere instrumentality or agency or adjunct in that sense, or as a sham or is used in fraud, by the dominant corporation, it will not be disregarded; and it will not be disregarded unjustly.

* * * * * *

"Whether one is a mere agency or instrumentality or they are identical, is a question of fact to be proved by competent evidence, * * *."

In the present case, we think the evidence paints a picture of domination and control of the finances, policies

and practices of both the parent corporation (First Trust Company) and the subsidiary corporation (REMCO) by Scott N. Brown, the majority stockholder and principal executive officer of both companies. This domination was so complete that neither corporation had any mind, will or existence of its own. Mr. Brown conducted the affairs of both corporations as though they were one company individually owned by him. The finances of each were treated as the finances of the other, and funds were transferred between the two companies indiscriminately so that their bank accounts amounted to a single treasury. Hiring for both companies was usually done by the same person. A number of employees of each corporation did work for the other. For several years and until January 1, 1962, the employees of both companies were paid on checks of REMCO; after that, all employees were paid on checks of First Trust Company. The two corporations were so integrated that they not only shared the same office space, they had the same phone number.

From the above evidence, we have concluded that First Trust Company and REMCO were "identical or indistinguishable in fact."

Complainant strongly urges that the domination of First Trust Company over REMCO would create, at most, a principal-agent relationship between the two corporations, and would do no more than subordinate First Trust Company's claim on the bond to the claim of the other creditors—which would be without significance in this case since the total claims involved are less than the amount of the bond, citing Tennessee Consol. Coal Co. v. Home Ice & Coal Co., 25 Tenn.App. 316, 156 S.W.(2d) 454.

██ We agree that complainant's position is correct where the relationship between two corporations is that of principal-agent. However, we cannot agree that the evidence in this case supports a principal-agent relationship, but are of the opinion it establishes that First Trust Company and REMCO were one and the same—a single entity—which would prevent recovery on the bond.

For the above reasons, the decree of the Chancellor is affirmed in all respects. Costs incident to the appeal are adjudged against the appellant, G. Royal Neese, Trustee, and his surety.

McAmis, P. J., and Parrott, J., concur.