Milton NEWMAN, suing on Behalf of himself and the following co-plaintiffs: Don Tweedy, Kevin Hofer, Pete Dennis, Raymond Russell, Bruce Jandry, Tim Schock, Jamey Whiting, Marty Crum, Garry W. Adams, Henry F. Corwin, and Vince Vaughn, Plaintiffs–Appellants,

v.

Edwin M. BARTEE,
Defendant–Appellee,

Elizabeth Kinser and Production Enterprises, Inc., Defendants.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Jan. 5, 1990.

Application for Permission to Appeal
Denied by Supreme Court
March 26, 1990.

Jordan Stokes, III, Nashville, for plaintiffs-appellants.

Paul R. Buchanan, Ortale, Kelley, Herbert & Crawford, Nashville, for defendant-appellee.

OPINION

LEWIS, Judge.

Plaintiff Milton Newman (Newman) filed his complaint against defendants, Edwin Bartee (Bartee), Elizabeth Kinser (Kinser), and Production Enterprises, Inc. (Production), "on behalf of himself and the other co-plaintiffs listed in the caption."[1] Newman alleged that Bartee and Kinser were joint venturers and Production was merely "their agent and instrumentality" to contract with plaintiff and the named "co-plaintiffs" and that the corporate shield should be pierced and Bartee and Kinser be held personally liable.

The facts pertinent to our inquiry are as follows:

In 1982, Bartee conceived the idea of producing a musical play entitled "Nashville, Here I Am." He employed Don Tweedy, one of the "co-plaintiffs," to make out demonstration records of the music. In November 1982, Bartee secured a charter of incorporation for Production Enterprises, Inc., with an authorized capital of

---

1. In his complaint, Newman requested "that the Court permit him to represent not only himself but the other co-plaintiffs...." So far as the record shows, no action was taken on Newman's request. However, the parties and the trial court treated Newman as the representative of the named "co-plaintiffs." While there has been no compliance with Tenn.R.Civ.P. 23 (class actions), we will not raise the question of Newman's right to represent the class since neither the parties nor the trial court saw fit to do so. Hereafter the plaintiff Milton Newman and the "co-plaintiffs" will be referred to as Newman.

$1,000. The capital was not paid in at that time. Defendant was simply "testing the waters" to determine the feasibility of the proposed production of the play. In the Fall of 1983, a decision was made to proceed with efforts to produce the play and at that time the required capitalization for Production Enterprises, Inc. was paid in.

Defendant Elizabeth Kinser was employed by Production Enterprises, Inc. to do administrative work required to produce the play. She was paid a salary of $500 per week. She had no ownership or interest in the play and had no financial interest other than her salary as a corporate employee.

Kinser, in her capacity as an employee of Production, entered into a written contract with all the co-plaintiffs except Tweedy and plaintiff Newman. Bartee was not a party to the contract. He did not participate in the hiring or contracting with any of the "co-plaintiff" musicians or Newman.

The show, "Nashville, Here I Am," opened in April 1984, but failed due to poor ticket sales and inability to raise additional capital. Bartee acted as producer of the play but received no income for his efforts. In fact, he loaned Production some $240,-000 and lost all of his personal assets as a result of the failure of the play, including his home and his IRA account.

While plaintiff Newman and "co-plaintiff" Tweedy did not enter into a contract with Production, they knew they were dealing with a corporation, accepted payments from the corporation, and looked solely to the corporation for compensation. Newman was told by Tweedy to bill the corporation.

Production Enterprises, Inc. was a valid Tennessee corporation in good standing at the time the contract was executed.

Prior to trial, Kinser filed a motion for summary judgment on the ground that she was not a "joint venturer" with Bartee and was simply an employee of Production. The trial court sustained her motion for summary judgment and dismissed the complaint as to her. Newman non-suited as to Production prior to the court's judgment.

Following the evidentiary hearing, the trial court found in pertinent part as follows:

Based upon the evidence and facts introduced at trial, the Court was of the opinion that the defendant, Production Enterprises, Inc., had engaged plaintiff Don Tweedy to serve as its musical director. The Court was of the opinion that none of the plaintiffs ever dealt with Mr. Ed Bartee personally when they were hired by Mr. Tweedy. The Court further was of the opinion that defendant Bartee had formed a valid and legal corporation by the name of Production Enterprises, Inc. There were no facts introduced by the plaintiffs to suggest there were any irregularities in the formation of this corporation.

The Court was further of the opinion that all of the plaintiffs had been employed by the corporation, Production Enterprises, Inc. More specifically, there was a written contract entered into and signed by Elizabeth Kinsor [sic] on behalf of Production Enterprises, Inc., with virtually all of the musicians. Mr. Bartee was at no time personally involved in negotiations and had no real contact with the musicians. During the course of the corporation's efforts to produce a musical entitled "Nashville Here I Am", Mr. Bartee advanced to the corporation loans in excess of $240,000.00.

The Court finds the assertion by the plaintiffs that Production Enterprises, Inc., was the agent of Mr. Bartee or somehow a dummy or sham corporation to be insufficient under Tennessee case law. The Court was therefore of the opinion that there was no personal liability on Mr. Bartee, individually. Based on the proof, there was an insufficient showing that the corporation should be disregarded. The Court finds that the plaintiffs knew of the existence of the corporation, that all of the contracts were entered into with the corporation,

and that Mr. Bartee at no time did anything to mislead any of the plaintiffs.

This case was tried to the court without a jury. We therefore "review ... findings of fact by the trial court ... de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn.R.App.P. 13(d).

The appellant has the burden in this court of showing that the preponderance of the evidence is otherwise. *Capital City Bank v. Baker,* 59 Tenn.App. 477, 442 S.W.2d 259 (1969). The appellant has failed to carry his burden. The preponderance of the evidence fully supports the Chancellor's findings.

In support of his contention that the corporate shield should be pierced, Newman cites *Neese v. Fireman's Fund Ins. Co.,* 53 Tenn.App. 710, 386 S.W.2d 918 (1964) which in part states as follows:

> It is generally recognized that a corporation is a separate entity; however, where there is a showing that the corporation is a mere sham or dummy, or is being used to defeat public convenience, justify wrong, or protect fraud, the corporate entity will be disregarded. Fletcher on Corporations, Perm.Ed. (1963), Secs. 25 and 41, and cases there cited. See also *Post Sign Co. v. Jemc's, Inc.,* 48 Tenn.App. 13, 342 S.W.2d 385 wherein it is stated:

>> "A corporation is usually treated as a separate entity. (citing numerous cases)

>> "The separate entity will be quickly disregarded, however, upon a showing that the corporation is a mere sham or dummy, or where necessary to accomplish justice. *Fidelity Trust Co. v. Service Laundry Co.,* 160 Tenn. 57, 22 S.W.2d 6. This has occurred in a variety of situations, as where necessary to effectuate the intent of the testator in the case just cited, and in *Baldwin v. Davidson,* 37 Tenn.App. 606, 267 S.W.2d 756; or where the corporation

is in effect the agent of the stockholders. *Towles Co. v. Miles,* 131 Tenn. 79, 173 S.W. 439...."

*Id.* 386 S.W.2d at 921.

In support of his contention that the corporate shield should be pierced, Defendant also cites from *Fletcher Cyc. Corp.* § 44.1 (Perm.Ed.) which is as follows:

> If a corporation is organized and carries on a business without substantial capital in such a way that the corporation is likely to have insufficient assets available to meet its debts, it is inequitable that the stockholders should set up such a flimsy organization to escape personal liability. The attempt to do corporate business without providing any sufficient basis of financial responsibilities to creditors is an abuse of the separate entity and will be ineffectual to exempt the stockholders from corporate debts. It is coming to be recognized as the policy of the law that stockholders should in good faith put at the risk of the business unencumbered capital reasonably adequate for its prospective liabilities. If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is ground for denying the separate entity privilege.

*Id.* (footnotes omitted).

We are in complete agreement with *Neese* and § 44.1 of *Fletcher.* However, there is nothing in this record to show that Production is a "mere sham or dummy, or is being used to defeat public convenience, justify wrong, or protect fraud." While Production was organized with capital of $1,000 and did "go under," the evidence is that Production was properly formed and capitalized pursuant to all applicable statutes.

This Court, in *Tennessee RacquetBall Investors, Ltd. v. Bell,* 709 S.W.2d 617 (Tenn.App.1986), held that even though an individual exercises dominance over a corporation, this was not sufficient under an "alter ego" theory to make the individual liable to creditors. *Id.* at 622–23. *Bell* further held that to disregard the corporate

entity and find personal liability, there must be a demonstration of the "[u]se of control to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights." *Id.* at 622.

Here there was a valid corporation. All parties knew they were dealing with the corporation. There is nothing in this record to show any wrongdoing, misrepresentation, or fraud.

Plaintiffs' issue is without merit.

We have considered Bartee's motion that costs be assessed against plaintiff for frivolous appeal and find the motion to be without merit.

The judgment of the trial court is affirmed with costs assessed to plaintiff Newman and the cause remanded to the trial court for the collection of costs and any further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.