JAMES R. TULLY, JR.,                    )
                                        )
    Plaintiff/Appellant/            )
    Cross-Appellee,                 )    Appeal No.
                                        )    01-A-01-9601-CH-00031
VS.                                     )
                                        )    Davidson Chancery
USA WIRELESS, INC.,                     )    No. 93-2020-II(I)
PMT INVESTMENTS, INC., and              )
PATRICK M. THOMPSON, in both            )
his individual and corporate capacity,  )
                                        )
    Defendants/Appellees/           )
    Cross-Appellant USA Wireless,   )
    Inc.                            )

FILED

July 3, 1996

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

LARRY D. ASHWORTH
ASHWORTH & HIGH
227 Second Avenue, North
Nashville, Tennessee 37201-1636
    Attorney for Plaintiff/Appellant

HUGH C. HOWSER, JR.
KENNETH M. BRYANT
TRABUE, STURDIVANT & DEWITT
Suite 2500, 511 Union Street
Nashville City Center
Nashville, Tennessee 37205
    Attorney for Defendants/Appellees
    Cross-Appellant USA Wireless, Inc.

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED




BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
LEWIS, J.


# O P I N I O N

The issues in this appeal are (1) whether the chancellor erred in granting a judgment against a corporation for back wages, (2) whether the chancellor should have pierced the corporate veil and granted a judgment against the corporation's principal shareholder and (3) whether the court erred in dismissing the fraud claims against the principal shareholder. We affirm the chancellor's decision in part and reverse on the fraud claims made directly against the principal shareholder.

**I.**

Patrick M. Thompson was the principal shareholder and president of USA Wireless, Inc., a company he incorporated in February of 1990. James R. Tully, Jr. worked for USA Wireless, Inc. for ninety-six weeks without compensation. On November 22, 1991 Mr. Thompson sent Mr. Tully the following letter:

> On August 15, 1990, you received your last payroll check from USA Wireless, Inc. At that time we told you that there would not be any more payrolls because funds were thin and prospects of financing were not immediate. However, we did say that you could continue to work at USA with the understanding that there would be no payroll until the company received funding. When and if that occurs, you will be paid for your services at an agreed upon rate per year as an independent contractor.
>
> I am sorry to say that we have not been successful in securing the financing as of this date. As of November 1, 1991, you will have completed 96 weeks of work without a payroll. This means that USA Wireless owes you $158,000.00 for your services less your advances plus any approved expenses. Today the company has loaned you approximately $12,000.00 leaving a balance of $146,000.00. When and if the company receives a major funding of $2 million dollars or is sold or liquidated, USA Wireless will pay you $146,000.00 within five days of receipt of the proceeds. Until that time you will be paid on an agreed upon commission schedule to be determined.
>
> Not only do I look forward to paying you $158,000.00 less your loan; I look forward to the day you resume your work as a salaried employee as you were before August 15, 1990. It will mean that the company is properly capitalized and we are moving forward, making progress and benefiting all of our customers and employees.

> Rest assured that as long as I am in control of USA
> Wireless you will always have a position with this company.

> Warm regards.

On October 7, 1992, in an agreement signed by Thompson on behalf of the company, USA Wireless, Inc. sold certain of its assets to Continental Wireless Cable Television, Inc. for $950,000. When the company did not pay Mr. Tully he sued (among others) USA Wireless, Inc. and Mr. Thompson. Against Mr. Thompson personally Mr. Tully alleged that Thompson had falsely represented that if Mr. Tully would continue to work for USA Wireless, Inc. he (Thompson) would pay for the work and give Mr. Tully a twenty percent interest in the company. In a second amended complaint Mr. Tully alleged that USA Wireless, Inc. was the alter ego of Thompson, making him liable for the corporate debts. On cross motions for summary judgment the court granted Mr. Tully a judgment against USA Wireless, Inc. for $147,000 but dismissed the claims against Mr. Thompson individually.

## II.

On appeal USA Wireless, Inc. argues that the letter of November 22, 1991 promised to pay Mr. Tully only if the company received two million dollars in funding or was sold or liquidated. The company argues that the obligation to pay Mr. Tully never arose because neither of these events happened.

We think, however, that the company's reliance on the conditions in the letter is misplaced. First, the letter contains an unambiguous acknowledgment that USA Wireless, Inc. owes Mr. Tully $146,000 for his past services. Second, the language the company asserts is a condition precedent, we read as Mr. Thompson's promise to pay the debt as soon as the company was in a position to do so. There is no indication in the record that Mr. Tully agreed to forego payment if the conditions

in the letter were never met. Therefore, we think the chancellor properly granted Mr. Tully summary judgment on the claim against USA Wireless, Inc.

### III.

The corporate entity should be disregarded where it is a mere sham or dummy, where it is being used to justify wrong or where it is used to protect fraud. *Neese v. Fireman's Fund Insurance Company*, 53 Tenn. App. 710, 386 S.W.2d 918 (1964). Whether a corporation is a mere instrumentality of an individual is a question of fact, and the decision to disregard the corporate entity will depend on the circumstances of each case. *Electric Power Board v. St. Joseph Valley Structural Steel Corporation*, 691 S.W.2d 522 (Tenn. 1985). The one seeking to hold shareholders liable for the debts of the corporation has the burden of proving facts justifying piercing the corporate veil. *Schlater v. Haynie*, 833 S.W.2d 919 (Tenn. App. 1991). In *Schlater*, we addressed some assertions of particular misconduct on the part of corporate officers and concluded that so long as the corporate officers did not use their control of the corporation for fraudulent purposes they had the right to treat it as their own business enterprise, to favor a secured creditor over another (even when it meant reducing the personal liability of one of the officers), and to organize a successor corporation (with the infusion of new capital from one of the corporate officers) to take up the business of the failed corporation. The key, of course, is whether the assets of the failed corporation were fraudulently appropriated for the corporate officers' purposes. *See* 833 S.W.2d at 926-927. *See also Tennessee Racquetball Investors, Ltd. v. Bell*, 709 S.W.2d 616 (Tenn. App. 1986).

With these principles in mind, we are satisfied that Mr. Tully was not entitled to summary judgment piercing the corporate veil of USA Wireless, Inc. The facts in the record reveal that the company was organized by Mr. Thompson, who procured a charter on February 27, 1990. The company had eight original

shareholders and Mr. Thompson, his wife Rita Thompson, and Nancy Cash served as directors. Mr. Thompson supplied the start-up operating capital. Ms. Thompson took no part in the company's operation and, apparently, did not ever attend a meeting of the board of directors. She did receive some payments of corporate funds for her personal use, but these payments were accounted for on Mr. Thompson's ledger and the company received credit for the payments on the amount owed to him.

When the corporation sold part of its assets for $950,000, the proceeds of the sale were applied to the corporate debts -- admittedly including a partial payment to Mr. Thompson. We do not think, however, that a finder of fact could infer that any of the corporate funds were appropriated for fraudulent purposes.

The remaining unanswered question, of course, is whether Mr. Thompson was entitled to summary judgment on the assertion that the corporate veil should not be pierced. While this is a closer question, we think the chancellor correctly decided this issue as well. Again, the key issue is whether there are controverted facts from which a trier of fact could infer that the corporate form was used to defraud creditors or that the corporation's assets were fraudulently diverted for illegal or improper purposes. We find no evidence in the record to rebut the corporation's evidence that all of its assets were properly accounted for.

**IV.**

Mr. Tully also asserts that the lower court erred in dismissing the claims he made directly against Mr. Thompson and PMT, Inc. for fraud and breach of contract. The appellees did not address these issues in their brief and we find that the evidence in the record is in conflict. Therefore, summary judgment on these claims was improper.

The judgment of the lower court is affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.  Tax the costs on appeal one-half to the appellant and one-half to the appellees.


_____
BEN H. CANTRELL, JUDGE


CONCUR:



_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION



_____
SAMUEL L. LEWIS, JUDGE